Amy B. Goldsmith
Joel H. Rosner
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, New York 10018
Telephone: 212-216-8000
Facsimile: 212-216-8001
agoldsmith@tarterkrinsky.com
joelrosner@tarterkrinsky.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TASTEFAIRY CORPORATION d/b/a MARLA AARON JEWELRY, <br><br> Plaintiff, <br><br> v. <br><br> SONIYA KAWAR, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Tastefairy Corporation d/b/a Marla Aaron Jewelry ("MAJ"), by its attorneys, Tarter Krinsky & Drogin LLP, for its Complaint against Defendant Soniya Kawar ("Defendant") alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trade dress infringement and unfair competition arising under the provisions of the Trademark Act of 1946, 15 U.S.C. §1051 et seq., particularly under 15 U.S.C. § 1125(a), and copyright infringement arising under the provisions of the Canadian Copyright Act R.S.C. 1985, c. C-42. MAJ seeks preliminary and permanent injunctive relief prohibiting

Defendant from continuing its infringing conduct.

## THE PARTIES

2. MAJ is a corporation organized and existing under the laws of the State of New York, having a principal place of business at 31 West 47th Street, New York, New York 10036.

3. Defendant is an individual domiciled in, and a citizen of, India. Defendant resides at 106, Shiri Rampuri Colony, Niwaru Road, Jaipur, Rajasthan, India 302012. Defendant does business under the name Custom Design Jewels in an e-commerce website operated through Etsy, Inc. ("Etsy") that may be accessed at https://www.etsy.com/shop/CustomDesignJewels. Through that e-commerce website, Defendant conducts business in New York and generally in the United States.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338 and 1367.

5. Personal jurisdiction is proper over Defendant. She submitted a counter notification under 17 U.S.C. § 512(g)(3) of the Digital Millennium Copyright Act (the "Counter Notice"), which indicates that the submitter of the counter notice "consent[s] to the jurisdiction of Federal District Court for the judicial district in which the address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found." Defendant's Counter Notice, which contains her consent to jurisdiction, is attached as Exhibit A. The Counter Notice, which was transmitted to MAJ by Etsy on April 24, 2019, states that Etsy is located at 117 Adams Street, Brooklyn, NY 11201, which is in this District. Therefore, Defendant has consented to personal jurisdiction in this District by virtue of submitting the Counter Notice to Etsy.

6. Personal jurisdiction over Defendant is also proper because the unlawful conduct complained of herein has caused, and continues to cause, injury to MAJ within this District; Defendant regularly conducts, solicits, or transacts business in this District through her e-commerce site on Etsy, and, upon information and belief, Defendant has accepted and fulfilled sales orders for the infringing products alleged herein from consumers within this District; Defendant derives substantial revenue in interstate and/or international commerce; and Defendant regularly and systematically directs electronic activity into the State of New York through her Etsy website from which the infringing products alleged herein can be purchased, with the manifest intent of engaging in business within this District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 and 17 U.S.C. § 512(g)(3). Defendant is transacting and doing business within this District, is committing the acts complained of herein within this District, and has otherwise directed her illegal conduct complained of herein to this District, causing damage to MAJ in this District.

**MAJ's Designs and Intellectual Property Rights in its Designs**

8. MAJ is the namesake company of jewelry designer Marla Aaron and sells jewelry pieces made from her designs (see www.marlaaaron.com).

9. MAJ, started in 2012, makes a series of proprietary closures, chains and convertible jewelry out of precious metals and stones. The collection of jewelry that Marla Aaron has designed for MAJ and which MAJ sells began as one uniquely-shaped proprietary lock and now constitutes an entire collection of proprietary locks that can be worn in numerous ways and used as "jewel tools" with an individual's jewelry collections — redefining the "precious" in jewelry with individuality.

10. Marla Aaron was inspired by ordinary hardware store carabiners to create MAJ's

proprietary locks, which transforms an ordinary hardware store carabiner into beautiful jewelry pieces that are made of precious metals, such as gold, silver, and platinum, and which often use gems, such as diamonds, orange sapphires, aquamarine, turquoise, and purple spinels. The proprietary locks come in numerous unique, reimagined, and innovative shapes of oblongs, hearts, crosses, boomerangs, lightning bolts, elongated stars, and water droplets, which distinguish MAJ's proprietary locks from those of all other designers.

11. Each of the MAJ proprietary locks also incorporates a closure piece that is an original design of distinctive cylindrical and/or angled edge closures that open or close using a twisting mechanism. Instantly identifiable as MAJ's signature, these modern, sculptural closures ("proprietary closures") are the cornerstone of MAJ's fine jewelry collection.

12. Marla Aaron uses her creativity to design each "lock" for MAJ, making deliberate choices about the shape of each of design and specifically selecting the precious metals that will be used to make the lock, whether and which gems to use, how such gems should be cut, and how they should be displayed on a particular design.

13. MAJ's proprietary locks, incorporated into the overall jewelry collection, have been and continues to be widely recognized in the United States, Canada, and around the world for the streamlined, industrial and yet elegant appearance of the proprietary locks. From the way MAJ makes the proprietary closures, to its individual creative designs, MAJ's proprietary lock designs are unique and have been recognized as such--from the unusual and original stone combinations and arrangements to the very methods used to create the proprietary closure mechanism on them. The proprietary locks are an entire system that is original to MAJ and is extremely recognizable to the trade and the consumer.

14. Since the launch, MAJ has invested considerable time and money in its efforts, and

the MAJ proprietary lock designs have become incredibly popular. The proprietary locks are sold at www.marlaaaron.com, through Instagram communications, via Facebook, and at numerous retail stores throughout the US, Canada, and in international markets, including the Europe, Asia and the Middle East.

15. MAJ has also frequently been discussed in leading newspapers and publications in the US and the world such as The Financial Times, Forbes, Vanity Fair, InStyle Magazine, The New York Times, The Adventurine, Vogue, www.wallpaper.com, and many others (see https://marlaaaron.com/blogs/news).

16. In particular, the MAJ proprietary locks have received great acclaim. In fact, to highlight MAJ's significant creativity and recognized artistic contributions, an entire collection of fine-jewelry items created by MAJ, including its proprietary locks comprised of original shapes and uniquely shaped proprietary closures, were on exhibit in 2016 in New York City at the Museum of American Finance. The exhibit was titled "Worth its Weight: Gold from the Ground Up" and featured several unique objects on loan from collections around the country. The MAJ designs were compared to and shown alongside collections from the Smithsonian Institution and Tiffany & Co. Archives to regional, national, and international visitors of this well-known museum.

17. MAJ created, conceived and built a unique custom vending machine to house the proprietary locks as a groundbreaking cost-effective way of selling fine jewelry to customers outside of traditional store and online channels. In 2017, the Brooklyn Museum placed the MAJ custom vending machine in the entryway to the Museum for the Christmas season where it was such a success it remained through Valentine's Day. In 2018, MAJ moved the machine to the garden of the William Vale Hotel in Brooklyn. Numerous articles have been written about the

uniqueness and success of the vending machine and they can all be found on MAJ's website. InStyle.com proclaimed that MAJ's "pendants are the chicest thing in semi-permanent bijoux since the Cartier Love bracelet" and further referred to MAJ's jewelry as "gorgeous creations."

18. One of MAJ's proprietary locks, which utilizes one of her proprietary closures, is a design of a jewelry piece in the shape of a heart and made of precious metal, with the MAJ proprietary cylindrical closure on one side of the heart made of precious metal embellished with gems set in tiers. This design is known as the "Stoned Heartlock." The original version of this design, which used diamonds and continues to be sold today, is known as the "Stoned Heartlock with Diamonds." Photographs of the Stoned Heartlocks and the Stoned Heartlock with Diamonds, which are sold on MAJ's website and through numerous other retailers, and via social media, are attached as Exhibit B.[1]

19. MAJ first sold jewelry bearing the designs of the Stoned Heartlock and Stoned Heartlock with Diamonds in February 2016 and has continuously sold jewelry bearing those designs since then, including in the US and Canada.

20. As a result of MAJ's design work and the public acclaim concerning that design work, consumers, including celebrities, potential customers, the jewelry trade and related retailers, the media and others have come to recognize that the trade dress of MAJ's designs is an indicator that particular jewelry pieces are MAJ's work product and are owned by MAJ.

21. As a result of the foregoing, consumers, including celebrities, potential customers, the jewelry trade and related retailers, the media and others have particularly come to recognize the trade dress of MAJ's designs of the Stoned Heartlock and the Stoned Heartlock with Diamonds as indicators that these particular jewelry pieces are MAJ's work product and are owned by MAJ.

---

[1] *See also* https://marlaaaron.com/collections/stoned-baby-heart-lock/products/stoned-baby-heart-lock; https://marlaaaron.com/collections/stoned-heart-lock/products/stoned-heart-lock-with-diamonds.

22. The trade dress of MAJ's designs, including the designs of the Stoned Heartlock and the Stoned Heartlock with Diamonds, thus have acquired secondary meaning and have become source-identifying.

23. MAJ also owns valid and subsisting Canadian copyright registrations for her designs, including Registration No. 1157295, which covers the Stoned Heartlock with Diamonds design. The Certificate of Registration for the copyright covering the Stoned Heartlock with Diamonds is attached as Exhibit C.

24. MAJ is also the owner of all intellectual property rights in the proprietary closures and chains of MAJ's designs, including the copyright and trade dress rights discussed above.

**Defendant's Unlawful Activities**

25. Upon information and belief, Defendant learned of MAJ and the Stoned Heartlock with Diamonds before or in April 2019 and had access to the Stoned Heartlock with Diamonds, which has been publicly displayed and sold on MAJ's website and on the website of retailers carrying MAJ designs since MAJ began selling jewelry bearing that design, as well as on Instagram and Facebook.

26. Without MAJ's consent, Defendant intentionally copied and/or created derivative works of the Stoned Heartlock with Diamonds ("Defendant's Copy"). Defendant's Copy is nearly identical and/or substantially similar to the Stoned Heartlock with Diamonds.

27. Defendant copied the Stoned Heartlock with Diamonds without MAJ's authorization, license, consent, or knowledge, and without any remuneration to MAJ.

28. That Defendant copied the Stoned Heartlock with Diamonds when she created Defendant's Copy is evidenced by the striking similarities between the Stoned Heartlock with Diamonds and Defendant's Copy, which cannot possibly be explained other than as a result of

copying and Defendant's access to the Stoned Heartlock with Diamonds as a result of the widespread dissemination of MAJ's Stoned Heartlock with Diamonds as long ago as 2016 in the United States, Canada, and/or in the rest of the world, and the substantial similarities between the parties' works.

29. As can be seen from viewing and comparing the Stoned Heartlock with Diamonds and Defendant's Copy, the design of Defendant's Copy is nearly identical and/or substantially similar to the Stoned Heartlock with Diamonds. The chart below contains a side-by-side comparison of the Stoned Heartlock with Diamonds and Defendant's Copy:

| MAJ's Stoned Heartlock with Diamonds | Defendant's Copy |
|---|---|
| | |

30. Since Defendant copied the Stoned Heartlock with Diamonds to create Defendant's Copy, it has, upon information and belief, manufactured, or caused to be manufactured, Defendant's Copy, and Defendant has publicly displayed and sold Defendant's Copy at least on her e-commerce site on the Etsy platform, specifically, at https://www.etsy.com/listing/667924614/wholesale-26mm-14k-solid-gold-pave.

31. As a result of Defendant's actions described above, MAJ has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, public display, and/or sale of Defendant's Copy. Defendant has never accounted to or otherwise paid

MAJ for its use of the Copyrighted Work.

32. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to MAJ for which MAJ has no adequate remedy at law.

33. Upon information and belief, before or in April 2019, Defendant, in an attempt to piggyback off of the success of MAJ and its Stoned Heartlock with Diamonds trade dress, began using unauthorized imitations of the trade dress of the Stoned Heartlock with Diamonds in connection with the offering and sale of jewelry.

34. Defendant does not have MAJ's consent or license, written or otherwise, to use the trade dress of the design of the Stoned Heartlock with Diamonds or to copy that design in violation of MAJ's copyright.

35. Upon information and belief, Defendant's Copy is of lesser quality than the Stoned Heartlock with Diamonds.

36. This unauthorized use of the trade dress of the design of the Stoned Heartlock with Diamonds is likely to create and foster the false impression that Defendant's business and the products she offers originate from or are authorized by or affiliated with MAJ.

37. On April 23, 2019, MAJ submitted a notice to Etsy pursuant to 17 U.S.C. § 512(c), requesting that it take down the listing for Defendant's Copy (the "Takedown Notice") based on MAJ's Canadian copyright in the design of the Stoned Heartlock with Diamonds.

38. Etsy complied with the Takedown Notice and removed the listing for Defendant's Copy of the MAJ Stoned Heartlock with Diamonds from Defendant's e-commerce site on April 23, 2019.

39. On April 24, 2019, Defendant submitted the Counter Notice pursuant to 17 U.S.C. § 512(g), challenging the Takedown Notice and denying any violation of law.

40. Etsy has advised in its transmittal of the Counter Notice that it will permit Defendant to repost the listing for Defendant's Copy and continue to sell it on Defendant's Etsy site "[u]nless you notify us of an action seeking a court order against the allegedly infringing member . . . [within] 10 business days, on May 9, 2019."

41. Defendant's use of the MAJ trade dress of the design of the Stoned Heartlock with Diamonds is without permission or authority of MAJ and such use has been and continues to be in a manner that is likely to cause confusion, mistake and to deceive.

42. Defendant's use of the MAJ trade dress of the design of the Stoned Heartlock with Diamonds is likely to lead others to mistakenly believe that Defendant's Copy originates from or in some way is associated with, sponsored, authorized or endorsed by, or related to MAJ.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Unfair Competition under 15 U.S.C. § 1125(a)**

43. MAJ repeats and realleges the allegations of paragraphs 1 through 37 as if fully set forth herein.

44. This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. §1051 et seq., particularly under 15 U.S.C. § 1125(a), and alleges the use in commerce of false designations of origin, false descriptions and false representations.

45. Prior to the acts of the Defendant complained of herein, MAJ extensively marketed, promoted and used the trade dress of its designs, and in particular, the trade dress of its design of the Stoned Heartlock with Diamonds, throughout the United States, Canada, and the rest of the world, to identify its products and to distinguish them from those provided by others. By reason of the distinctiveness of the trade dress of MAJ's designs, this trade dress indicates to customers, potential customers, the jewelry industry and related retailers, the media, and others that jewelry bearing such trade dress is offered and provided by MAJ.

46. As a result of MAJ's marketing, promotion and substantial sales of jewelry bearing the trade dress of its designs, and in particular, the trade dress of its design of the Stoned Heartlock with Diamonds, that trade dress has developed and has a secondary and distinctive meaning to customers, potential customers, the jewelry trade and related retailers, the media and others so that jewelry bearing this trade dress is known and understood to originate from a single source, namely MAJ.

47. Upon information and belief, Defendant is using the trade dress of MAJ's designs, and in particular, the design of the Stoned Heartlock with Diamonds, with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the reputation of MAJ and to improperly appropriate MAJ's valuable trade dress rights.

48. Defendant's use and continued use of Defendant's Copy will cause and is likely to cause confusion, mistake or deception in the minds of the trade and purchasing public, the media and others, and create the erroneous impression that Defendant's use of Defendant's Copy is authorized, endorsed, sponsored, authorized or approved by MAJ, or, alternatively, that the offering of jewelry bearing the trade dress of MAJ's designs is provided, authorized, endorsed, sponsored, authorized or approved by MAJ.

49. Defendant's use of Defendant's Copy constitutes a use in interstate commerce of a false designation of origin and a false and misleading description and representation of goods in commerce, with knowledge of the falsity, which has and is likely to cause confusion, mistake and deception and a use in commercial advertising and promotion which misrepresents the nature, characteristics, qualities and origin of the Defendant's goods and commercial activities, all within the meaning and in violation of 15 U.S.C. § 1125(a).

50. Defendant's use and continued use of Defendant's Copy is causing and, unless

enjoined, will continue to cause irreparable harm and damage to MAJ and its business, reputation and goodwill and has caused MAJ to suffer monetary damages in an amount not thus far determined.

51. Unless restrained and enjoined, the Defendant's aforesaid acts will cause MAJ irreparable harm and damage for which there is no adequate remedy at law, and which will continue until Defendant is permanently enjoined from further infringement.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Copyright Infringement Under the Laws of Canada)

52. MAJ repeats and realleges the allegations of paragraphs 1 through 46 as if fully set forth herein.

53. This is an action for copyright infringement under Section 27(1) of the Canadian Copyright Act R.S.C. 1985, c. C-42 ("the Act").

54. Copyright infringement constitutes a transitory cause of action and may be adjudicated in the courts of a sovereign other than the one in which the cause of action arose.

55. The Berne Convention for the Protection of Literary and Artistic Works, to which the United States and Canada are signatories, provides that works authored by citizens of signatory states must be accorded at least the same copyright protection in other signatory states as such states accord works authored by their own citizens, and Canada accords such "national treatment" to U.S. authors, pursuant to, inter alia, Section 5(1) of the Act. Thus, at the time the MAJ design of the Stoned Heartlock with Diamonds was completed, the copyright therein was protected under Canadian law, without registration or any further formalities.

56. MAJ subsequently obtained a copyright registration in Canada for the Stoned Heartlock with Diamonds.

57. Defendant has infringed MAJ's copyright in the Stoned Heartlock with Diamonds

under Section 27(1) of the Act, by, inter alia, copying and/or creating derivative works based upon the Stoned Heartlock with Diamonds, and offering the same for sale in the United States and Canada, and to otherwise deal with rights in the Stoned Heartlock with Diamonds reserved exclusively to copyright owners under Section 3(1) of the Act, all without MAJ's consent.

58. Upon information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge of MAJ's rights in the Stoned Heartlock with Diamonds, and has enabled Defendant illegally to obtain profit therefrom.

59. MAJ is entitled to a permanent injunction against Defendant for her acts of copyright infringement under Canadian law, pursuant to Section 34(1) of the Act.

## PRAYER FOR RELIEF

WHEREFORE, MAJ respectfully requests that this Court enter a judgment against the Defendant as follows:

    A.    That Defendant and her officers, directors, partners, employees, agents, servants and attorneys and those persons in active concert or participation with them are preliminarily and permanently enjoined from:

        1.    Using Defendant's Copy or any colorable imitation thereof in connection with the manufacturing, offering, selling, distributing, advertising or promoting the sale of any goods or services or from otherwise using the trade dress of MAJ's designs, particularly including the design of the Stoned Heartlock with Diamonds or any trademarks or trade dress confusingly similar thereto or any design substantially similar thereto;

        2.    Infringing the trade dress and/or copyright of MAJ's designs,

particularly including the design of the Stoned Heartlock with Diamonds;

3. Listing for sale or selling Defendant's Copy through Defendant's e-commerce site at Etsy or elsewhere;

4. Unfairly competing with MAJ; and

5. Using in connection with the sale of any goods or services or the dissemination or distribution of advertising, promotional or marketing materials, a false or misleading description or representation including designs, words or other symbols tending to deceive or cause confusion with MAJ or the trade dress, or any design or work that is substantially similar to the copyright, of MAJ's designs.

B. That Defendant cancel any pending orders for Defendant's Copy;

C. That Defendant be ordered to deliver up to MAJ for destruction Defendant's Copy, molds, signs, labels, stickers, prints, packages, wrappers, receptacles, photographs, advertisements and other written or printed material in their possession, custody or control which bear the trade dress or copyright of MAJ's designs, alone or in combination with any other words, marks or other elements;

D. That Defendant be required to account to MAJ for all profits resulting from Defendant's infringing activities, unfair competition and false advertising and that such award of profits to MAJ be increased by the Court as provided for under 15 U.S.C. § 1117(b);

E. That MAJ have a recovery from Defendant of all damages sustained by MAJ resulting from Defendant's infringing activities and unfair competition;

F. That MAJ have a recovery from Defendant of the costs of this action and MAJ's reasonable counsel fees pursuant to 15 U.S.C. § 1117; and

G. That MAJ have all other and further relief as the Court may deem just and proper under the circumstances.

Dated: New York, New York
May 9, 2019

TARTER KRINSKY & DROGIN LLP

By: /s/ Joel H. Rosner

Amy B. Goldsmith
Joel H. Rosner
1350 Broadway
New York, New York 10018
Telephone: (212) 216-1127
Facsimile: (212) 216-8001
agoldsmith@tarterkrinsky.com
joelrosner@tarterkrinsky.com

*Attorneys for Plaintiff*